**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

**GAYLON W.  BOSHEARS, as Trustee of the
GAYLON W.  BOSHEARS REVOCABLE
TRUST, CAROLINE B.  BOSHEARS, as
Trustee of the CAROLINE B.  BOSHEARS
REVOCABLE TRUST, and WANDA
MENASCO, as Trustee of the FRANKIE
BOSHEARS MARITAL TRUST and
BOSHEARS FAMILY TRUST**                                                      **PLAINTIFFS**

**VS.**                                        **4:05CV01052-WRW**

**CERTAINTEED CORPORATION**                                        **DEFENDANT**

<u>**ORDER**</u>

Pending is Defendant's Motion for Summary Judgment,[1] to which Plaintiffs have

responded.[2]  Defendant replied to Plaintiffs' response,[3] and Plaintiffs filed a surreply.[4]

Plaintiffs, the owners of a shopping center --  Trellis Square -- brought this case against

Defendant, CertainTeed Corporation, a roofing material manufacturer, alleging negligence,

product liability, breach of implied warranties, fraud, and deceptive trade practices.

Plaintiffs are seeking compensatory and punitive damages.  According to the Complaint,[5]

Defendant supplied defective roofing materials to Plaintiffs, which leaked and caused damage to

---

[1]Doc. No. 15.

[2]Doc. No. 20.

[3]Doc. No. 23.

[4]Doc. No. 28.

[5]Doc. No. 1.

the building's interior.  Plaintiffs assert that Defendant knew that the material was defective and, therefore, engaged in fraud and deceptive trade practices.

For its motion for summary judgment, Defendant argues that Plaintiffs cannot present sufficient evidence to establish the essential elements of their causes of action.

## I.  Background

Plaintiffs own a shopping center comprised of three separate buildings -- identified as buildings A, B/C,[6] and D.  Roofing materials were purchased by Robert Hall Roofing in January, August, and September 2001 on behalf of Plaintiffs.  Materials manufactured by Defendant were installed on buildings B/C and D.  Materials from another manufacturer were installed on building A.

Soon after the new roofs were installed, Plaintiffs began having problems with the roofs on buildings B/C and D.  In contrast, they had no complaints about building A's roof.  The problems increased to such a degree that, by 2003, Plaintiffs asked Defendant about its warranty. In response, Defendant delivered a warranty to Plaintiffs that included a provision which expressly limited any implied warranties of merchantability or fitness for a particular purpose.[7] The roofs on buildings B/C and D continued to deteriorate.

In 2005, Plaintiffs made a complaint to Defendant because of "leaking and laps pulling apart."[8]  In response, Defendant asked Plaintiffs to provide a roof sample.[9]  After delivering the

---

[6]Building B/C was originally two separate buildings that were joined together before the installation of the new roof in 2001.

[7]Doc. No. 20.

[8]Doc. No. 15-3.

[9]Doc. No. 15-11.

sample, Plaintiffs received a letter from Defendant's quality manager, who informed them that the problems resulted from poor installation, and was not the result of granule loss.[10]  The quality manager mentioned that he examined the sample.[11]  However, no attempt was made to test the sample, and it was eventually lost.[12]

## II.  Summary Judgment Standard

Summary judgment is appropriate only when there is no genuine issue of material fact, so that the dispute may be decided on purely legal grounds.[13]  The Supreme Court has established guidelines to assist trial courts in determining whether this standard has been met:

> The inquiry performed is the threshold inquiry of determining whether there is the need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.[14]

The Court of Appeals for the Eighth Circuit has cautioned that summary judgment is an extreme remedy that should only be granted when the movant has established a right to the judgment beyond controversy.[15]  Nevertheless, summary judgment promotes judicial economy

---

[10]Doc. No. 20-7.

[11]*Id.*

[12]Doc. No. 20-8.

[13]*Holloway v. Lockhart*, 813 F.2d 874 (8th Cir. 1987); Fed  R. Civ. P. 56.

[14]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

[15]*Inland Oil & Transport Co. v. United States*, 600 F.2d 725, 727 (8th Cir. 1979).

by preventing trial when no genuine issue of fact remains.[16]  I must view the facts in the light

most favorable to the party opposing the motion.[17]  The Eighth Circuit has also set out the burden

of the parties in connection with a summary judgment motion:

> [T]he burden on the party moving for summary judgment is only to demonstrate,
> *i.e.*,"[to point] out to the District Court," that the record does not disclose a genuine
> dispute on a material fact.  It is enough for the movant to bring up the fact that the
> record does not contain such an issue and to identify that part of the record which
> bears out his assertion.  Once this is done, his burden is discharged, and, if the record
> in fact bears out the claim that no genuine dispute exists on any material fact, it is
> then the respondent's burden to set forth affirmative evidence, specific facts,
> showing that there is a genuine dispute on that issue.  If the respondent fails to carry
> that burden, summary judgment should be granted.[18]

Only disputes over facts that may affect the outcome of the suit under governing law will

properly preclude the entry of summary judgment.[19]

## III.  Authority

### A.  Products Liability

To recover under a strict-liability theory, a plaintiff must prove that the defendant

supplied a product in a defective condition that rendered it unreasonably dangerous and that the

---

[16]*Id.* at 728.

[17]*Id.* at 727-28.

[18]*Counts v. MK-Ferguson Co.*, 862 F.2d 1338, 1339 (8th Cir. 1988) (quoting *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-74 (8th Cir. 1988) (citations omitted)).

[19]*Anderson*, 477 U.S. at 248.

defective condition was the proximate cause of harm to a plaintiffs' property.[20]   Plaintiffs must produce sufficient evidence to raise an inference that the product was not only defective, but was also unreasonably dangerous.[21]

Strict liability is applied where there is damage to the *product itself* or to *other property* of the consumer.[22]   The Arkansas Supreme Court, in *Blagg v. Fred Hunt Co.*, stated that "there is no valid reason for holding that strict liability should not apply to property damage."[23]

For a product to be unreasonably dangerous under Arkansas law, the product failure must be something that a reasonable buyer or user did not expect.[24]   Unreasonably dangerous includes posing a risk not only to the consumer, but to the product itself or to a consumer's property.[25]

The doctrine of strict liability does not change the burden of proof as to the existence of a flaw or defect in a product, but it does do away with the necessity of proving negligence in order to recover for injuries resulting from a defective product.[26]

---

[20]Ark. Code Ann. § 4-86-102(a) (Repl. 1996) (Amended by 2007 Arkansas Laws, Act 316 (S.B. 906)); *E.I. Du Pont de Nemours & Co. v. Dillaha*, 280 Ark. 477 (1983).

[21]*Farm Bureau Ins. Co. v. Case Corp.*, 317 Ark 467 (1994).

[22]*Id.* (citing *Alaskan Oil, Inc. v. Central Flying Service*, 975 F.2d 553 (8th Cir. 1992); and *Blagg v. Fred Hunt Co., Inc.*, 272 Ark. 185 (1981)).

[23]*Blagg*, 272 Ark. at 190.

[24]Ark. Code Ann. § 16-116-102(7) (Repl. 1996) (Amended by 2007 Arkansas Laws Act, 315 (S.B. 905)); *Purina Mills, Inc. v. Askins*, 317 Ark. 58 (1994); *Berkeley Pump Co. v. Reed-Joseph Land Co.*, 279 Ark. 384 (1983).

[25]*Berkeley Pump*, 279 Ark. at 390 (stating that the Restatement of Torts limits recovery in strict liability to physical harm to persons or property).

[26]*Williams v. Smart Chevrolet Co.*, 292 Ark. 376 (1987).

The fact that a defective condition was discovered after an incident is not sufficient proof that a product is defective.[27]  Expert testimony is not essential to the claim:  "proof of a specific defect is not required when common experience teaches that the accident would not have occurred in the absence of a defect."[28]  Moreover, if a plaintiff excludes other possible causes of product failure, then a defect can be properly inferred.[29]

### B. Negligence

Proof of an accident is not sufficient to make out a claim for negligence.[30]   In order to prove negligence, there must be a failure to exercise proper care in performing a duty of care that is owed to others.[31]  Applying these standards, Plaintiffs must raise an inference that Defendant failed to do what a reasonable person would do or did what a reasonable person would not have done under the circumstances.  Proof of negligence can be established by showing that a manufacturer failed to use due care in discovering an obvious defect.[32]

Whether a duty is owed is a question of law, but the question of foreseeability and causation are usually questions of fact.[33]  A manufacturer has a duty to consumers to exercise reasonable care in the adoption of a safe plan or design, and to protect against an unreasonable

---

[27]*Id.*

[28]*Dancy v. Hyster Co.*, 127 F.3d 649, 653 (8th Cir. 1997).

[29]*Id.*

[30]*Coca-Cola Bottling Co. v. Gill*, 352 Ark. 240 (2003).

[31]*Costner v. Adams*, 82 Ark. App. 148 (2003).

[32]*Stalter v. Coca-Cola Bottling Co. of Arkansas*, 282 Ark. 443, (1984) (citing *Kraft-Phenix Cheese Corp. v. Spelce*, 195 Ark. 407, 409 (1938) (holding that proof of an obvious defect was sufficient to make a *prima facie* case, and warranted submitting question of negligence to jury)).

[33]*Gill*, 352 Ark. at 254.

and foreseeable risk.[34]  A manufacturer must use care in selection of materials, testing, and

inspection.[35]

       A negligent act is one from which a person should have foreseen a risk, and should have

either chosen not to act, or chosen to act carefully.[36]  Plaintiffs must establish an inference that

Defendant should have foreseen a risk of damage.[37]

### C.  Implied Warranties of Merchantability and Fitness for a Particular Purpose

       To recover for breach of an implied warranty of merchantability, a plaintiff must prove

that (1) he sustained damages; (2) the product was not merchantable, i.e., not fit for the ordinary

purpose for which such goods are used; (3) this unmerchantable condition was a proximate cause

of the damages; and (4) he was a person whom the defendant might reasonably expect to use or

be affected by the product.[38]

       "The implied warranty of fitness for a particular purpose merges with the warranty of

merchantability when the particular purpose for which the goods are used coincides with their

general functional use."[39]  In other words, if the particular purpose of the product is roofing,

---

[34]*International Harvester Co. v. Land*, 234 Ark. 682, 688 (1962) (holding that a manufacturer must use reasonable care and skill in designing a product that is safe for its intended purpose)).

[35]Arkansas Model Jury Instruction 1001 (2006) (citing *Green v. Equitable Powder Mfg. Co.*, 95 F. Supp. 127 (D.C. Ark. 1951)).

[36]*Ethyl Corp. v. Johnson*, 345 Ark. 476, 481 (2001) .

[37]*Wallace v. Broyles*, 331 Ark. 58 (1998).

[38]*F. L. Davis Builders Supply, Inc. v. Knapp*, 42 Ark. App. 52 (1993).

[39]*Great Dane Trailer Sales, Inc. v. Malvern Pulpwood, Inc.*, 301 Ark. 436, 443 (1990) (citing *Beech Aircraft Corp. v. Flexible Tubing Corp.*, 270 F. Supp. 548 (D. Conn. 1967)).

then Plaintiffs only need to prove the elements for breach of the implied warranty of merchantability.[40]

"An implied warranty of merchantability arises by operation of law when a purchaser and merchant enter into a contract unless the warranty is *effectively* disclaimed."[41]  Disclaiming implied warranties is governed by Ark. Code Ann. § 4-2-316.  Under this section, all implied warranties are excluded by expressions of  "as is," "with all faults," or "other plain language which calls the buyer's attention to the exclusion of warranties and makes clear that there is no implied warranty."[42]   The disclaimer clause must be conspicuous so that a reasonable person could notice it, and it must be brought to the attention of the buyer at the time of the sale.[43]

### D.  Deceptive Trade Practices

To be liable under the Arkansas Unfair and Deceptive Trade Practices Act,[44]  Defendants must have "knowingly" engaged in "deceptive and unconscionable trade practices."[45] The Act also imposes a causation element by requiring, "actual damage or injury as a result of the offense or violation."[46]  Deceptive conduct includes  making a false representation about the

---

[40]*Id.*

[41]*LeSueur Creamery, Inc. v. Haskon, Inc.*, 660 F.2d 342, 352 (8th Cir. 1981) (emphasis added).

[42]*O'Mara v. Dykema*, 328 Ark. 310, 319 (1997).

[43]*Mack Truck of Arkansas, Inc. v. Jet Asphalt & Rock Co.*, 246 Ark. 101, 108-09 (1969).

[44]Ark. Code Ann. §§ 4-88-101-115.

[45]Ark. Code Ann. § 4-88-107(a).

[46]Ark. Code Ann. § 4-88-113(f).

characteristics or certification of goods.[47]  There is also a catch-all provision which prohibits "any other unconscionable, false, deceptive act or practice."[48]

### E.  Fraud

In order to establish fraud, Plaintiffs must present sufficient evidence to raise an inference that Defendant (1) made a false representation of material fact; (2) knew that the representation was false or that there was insufficient evidence upon which to make the representation; (3) intended to induce action or inaction by Plaintiffs in reliance upon the representation; (4) Plaintiffs justifiably relied on the representation; and (5) Plaintiffs suffered damage as a result of the false representation.[49]

## IV.  Discussion

All reasonable inferences are given to Plaintiffs' evidence, and the evidence establishes the following facts: (1) Plaintiffs purchased roofing material from Defendant in 2001; (2) by 2003, the roof on buildings B/C and D had deteriorated at a much greater rate than the roof on building A; (3) visual inspection of Defendant's roofing material revealed obvious imperfections including excessive granule loss on large sections of the roof; (4) Defendants delivered a warranty to Plaintiffs' representative two years after the roof was installed.

Defendant contends that Plaintiffs have not submitted sufficient proof to create a reasonable inference that its product was defective, that it was manufactured in a negligent manner, and that it is subject to implied warranties.  I disagree.

### A.  Product Liability

---

[47]Ark. Code Ann. § 4-88-107(a)(1).

[48]Ark. Code Ann. § 4-88-107(a)(10).

[49]*Wal-Mart Stores, Inc. v. Coughlin*, No. CV-2005-1342-3, 2007 WL 1098162 (April 12, 2007).

Plaintiffs presented testimony from experts that there are large areas of the roof where roofing granules are worn away, leaving the underneath layer exposed to the elements, susceptible to damage, and to early depreciation.[50]  According to the experts, the proportion and pattern of the granule loss is consistent with a manufacturing defect.[51]  This testimony eliminates other causes of granular loss,[52] and Plaintiffs have presented sufficient evidence to create a reasonable inference that Defendant's roofing material was defective.

Finally, it is within common understanding that, when the composition of a roof begins to wear away in large sections, this would not have occurred unless there is a defect.  A jury could reasonably conclude that, when a roof's protective layer prematurely falls off, the roofing material was defective.

### B.  Negligence

Manufacturers owe a duty to their customers to provide functional products.  To conform to this duty, a manufacturer must use care in selection of materials, testing, and inspection. Proof of negligence can be established by showing that a manufacturer failed to use care in discovering an obvious defect.

Plaintiffs' evidence shows that there is an obvious glitch in large areas of the roofs on buildings B/C and D.  The thinning of the granules was apparent to the Plaintiffs' expert on

---

[50]Doc. No. 20-2, pp. 51-53; 20-3, p. 16.

[51]Doc. No. 20-3, p. 11; 20-2, p. 51.

[52]Doc. No. 20-2, pp. 53-55.

simple visual inspection.[53]  Moreover, Plaintiffs began to notice missing granules just two years after the roof was installed.[54]

From this evidence, a reasonable inference is raised that Defendant failed to use care in testing and inspecting their product.  Otherwise, Defendant would have noticed that the granules came loose much too easily.[55]  Moreover, when Plaintiffs sent a sample of the product to Defendant in 2005, no tests were performed, and the sample was discarded.[56]  From this evidence, a reasonable juror could conclude that Defendant was lackadaisical in testing its products.

### C.  Implied Warranties

The implied warranty of fitness for a particular purpose merges with the warranty of merchantability when the product is used in a manner for which it was designed.  In this case -- the product is used to install roofs and Plaintiffs used it for that purpose.  Therefore, Plaintiffs need only show that Defendant breached the implied warranty of merchantability.

The evidence supporting Plaintiffs' products claim and negligence claim is also sufficient to create an inference that Defendant breached an implied warranty of merchantability.

Defendant argues that its limited warranty expressly excludes implied warranties of merchantability.  However, in order for an exclusion to be effective, it must be brought to the buyer's attention at the time of purchase.

---

[53]Doc. No. 20-2, p. 55.

[54]Doc. No. 20-5.

[55]Doc. No. 20-3, p. 11 (testimony that any manufacturing process will have defects -- the goal is not to let them through).

[56]Doc. No. 20-8.

Defendant asserts that the warranty was given to the roofing company when the material was purchased.  Plaintiffs' representative affirms that he did not see a warranty until two years after the product was purchased.[57]  Moreover, the limited warranty submitted into evidence has a notation at the bottom indicating that the warranty was revised in 2003.  This presents a problem for Defendant's proof, since the roof was installed in 2001.[58]  There is enough evidence to create a disputed material fact, and it is up to the jury to decide if proper notice was given at the time of purchase.

### D.  Fraud and Deceptive Trade Practices

Plaintiffs have a higher burden to establish a case for fraud and deception.  The common law tort of fraud and the Deceptive Trade Practice Act require that a defendant act "knowingly."  The Arkansas Supreme Court recognized a close connection between fraud and deceptive trade practices allegations.[59]

Under both claims, Plaintiffs must show that Defendant knew that its product was defective and made material misrepresentations in order to induce Plaintiffs to buy a faulty product.[60]  A good-faith belief in a product is not a basis for a finding of fraud or deception.[61]  Therefore, Plaintiffs failed to produce any evidence that Defendant knowingly deceived and defrauded them.

---

[57]Doc. No. 20-5.

[58]Doc. No. 20-6.

[59]*FMC Corp., Inc. v. Helton*, 360 Ark. 465, 490 (2005).

[60]*McAnally v. Gildersleeve,* 16 F.3d 1493 (8th Cir. 1994) (applying Arkansas common law and holding that plaintiff must demonstrate that a defendant knew the misrepresentation was false when made).

[61]*Delta School of Commerce, Inc. v. Wood*, 298 Ark. 195 (1989).

**V.  Conclusion**

Plaintiffs have produced sufficient evidence to create a jury question on its theories of strict product liability, negligence, and implied warranty.  These claims do not require proof of intentional conduct.  But, there is not enough evidence to support Plaintiffs' claims of fraud and deceit.

Defendant's Motion for Summary Judgment is DENIED in part and GRANTED in part. Plaintiffs' claims of fraud and violation of the Arkansas Deceptive Trade Practice Act are DISMISSED WITH PREJUDICE.

IT IS SO ORDERED this 10th day of May, 2007.


/s/Wm. R. Wilson, Jr.
UNITED STATES DISTRICT JUDGE